Shahid Haque-Hausrath
Arif Haque
BORDER CROSSING LAW FIRM, P.C.
312 N. Ewing Street, 2nd Floor
Helena, Montana 59601
(406) 594-2004
Shahid@bordercrossinglaw.com
Arif@bordercrossinglaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| JOSE RIOS-DIAZ, ELIGIO DURAN-SANCHEZ, DELFIO MEJIA-OCHOA, and EDUARDO BARRAGAN-NARANJO, on behalf of themselves and all others similarly situated, and MONTANA IMMIGRANT JUSTICE ALLIANCE.<br>Plaintiffs,<br>v.<br>COLONEL TOM BUTLER, in his official capacity as Chief Administrator of the MONTANA HIGHWAY PATROL, ATTORNEY GENERAL TIM FOX, in his official capacity as head of the MONTANA DEPARTMENT OF JUSTICE.<br>Defendants. | Cause No. CV-13-77-BU-DLC-CSO<br><br>**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Jose Rios-Diaz, Eligio Duran-Sanchez, Delfio Mejia-Ochoa and Eduardo Barragan-Naranjo, on behalf of themselves and all others similarly situated, and the Montana Immigrant Justice Alliance (collectively "Plaintiffs")

oppose the motion to dismiss submitted by Defendants Colonel Tom Butler, sued in his official capacity as acting Chief Administrator of the Montana Highway Patrol, and Attorney General Tim Fox, sued in his official capacity as head of the Montana Department of Justice (collectively, "Defendants").

Plaintiffs' complaint includes five counts brought under 42 U.S.C. § 1983, alleging that the Defendants' conduct has violated the Fourth Amendment of the U.S. Constitution (Count I); the Fourteenth Amendment of the U.S. Constitution (Count II); Article II, §§ 4 and 11 of the Montana Constitution (Counts III and IV); and Title VI of the Civil Rights Act of 1964 (Count V). Plaintiffs do not seek any money damages, and pursue only prospective injunctive relief.

Defendants' Rule 12(b)(6) motion does not seek to dismiss every count of the complaint, and leaves Count I unchallenged as to the Montana Highway Patrol. The Defendants argue that: (1) the Fourth Amendment claim in Count II is "duplicative" of the Fourteenth Amendment claim in Count I; (2) the Montana constitutional claims in Counts III and IV are barred by the Eleventh Amendment; (3) the Civil Rights Act claim in Count V cannot be brought against individual defendants and must be brought against programs or entities; and (4) that Plaintiffs fail to state a claim against Attorney General Tim Fox. (Doc. 16 at 4-15.) For the reasons discussed below, Defendants fail to satisfy their burden to dismiss of any of the counts of the Complaint or to dismiss Attorney General Tim Fox.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged do not state a claim that is "plausible on its face." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007). In other words, dismissal is warranted if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

When assessing the sufficiency of a complaint, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of that party as well. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997). "[O]n a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *NOW v. Schleider*, 510 U.S. 249, 256 (1994) (quotation marks and citation omitted).

In addition, Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. 7 Wright & Arthur R. Miller, Federal Practice and Procedure Section 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to

state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Therefore, a district court does not dismiss a complaint under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 13 (1957); *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## ANALYSIS

### I. The Fourth and Fourteenth Amendment Claims Present Distinct Legal Arguments Asserting the Violation of Plaintiffs' Rights, and the Fourth Amendment Claim Cannot Be Dismissed as Duplicative.

Defendants assert that the Fourth and Fourteenth Amendment claims in Counts I and II are "duplicative" of one another, and impermissibly "double up" on constitutional claims. (Doc. 16 at 10-12.) However, Defendants mischaracterize the full extent of the Plaintiffs' factual and legal allegations in order to conflate the two claims, obscuring important distinctions between them.

Defendants argue that the "gist of the plaintiffs' lawsuit is that the Montana Highway Patrol allegedly discriminates against Latinos," and mischaracterize this as solely a violation of the Fourteenth Amendment. (Doc. 16 at 10.) Defendants claim that "[t]he plaintiffs' Fourth Amendment claim (Count II) is merely a restatement of their Equal Protection claim (Count I)." (*Id*. at 10-12.) This is incorrect, as the Fourth Amendment claim is based on different facts and laws, and does not necessarily depend on the existence of racial discrimination.

The Fourth Amendment claim alleges that the Montana Highway Patrol is "seizing drivers and passengers it suspects of being in the country without authorization for a prolonged period, often between forty minutes to two hours, while attempting to make contact with DHS to ascertain their immigration status and determine if an immigration enforcement officer wishes to assume custody of them." (Doc. 1 at 2-3.) The complaint carefully describes the Defendants' systematic practices, and explains why this conduct exceeds the proper role of the state in enforcing civil immigration laws. (Doc. 1 at 16-24.)

The complaint even goes so far as to specifically cite legal authority showing that local law enforcement officers cannot seize, arrest, or unreasonably prolong the detention of individuals solely based on known or suspected civil immigration violations. *See Melendres v. Arpaio*, No. PHX-CV-07-02513-GMS, 2013 U.S. Dist. LEXIS 73869 at *60-63, 2013 WL 2297173 (D. Ariz. May 24, 2013) (granting permanent injunction due to violations of the Fourth and Fourteenth Amendments in class action lawsuit by Latinos); *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) (upholding preliminary injunction).

In addition to alleging a policy and practice that is unconstitutional in and of itself (detention without probable cause for the purpose of checking into civil immigration status), the complaint also alleges that "this custom, policy and practice is <u>implemented</u> in a discriminatory manner, as patrol officers use race and

ethnicity as a motivating factor in forming a suspicion that a person is in the United States without valid immigration status." (Doc. 1 at 3.) (emphasis added). In other words, regardless of whether the practice itself violates the Fourth Amendment, it is also enforced selectively against, and disparately impacts, Latino residents and visitors of Montana in violation of the Fourteenth Amendment. These are distinct claims, neither necessarily depending on the validity of the other.

If Plaintiffs' Fourth Amendment claim were dismissed, the Fourteenth Amendment claim would not provide a remedy for all of the unconstitutional conduct that is challenged in the complaint. Therefore, Defendants are mistaken that the Fourth and Fourteenth Amendment claims are duplicative.

Indeed, similar Fourth and Fourteenth Amendment claims were viewed as distinct by the district court in *Melendres*, 2013 U.S. Dist. LEXIS 73869 at *212-60, when it granted partial summary judgment in favor of the plaintiffs on their Fourth Amendment claim, but proceeded to trial on the Fourteenth Amendment claim. 836 F. Supp. 2d 959, 994 (D. Ariz. 2011). The distinction was also highlighted when the Ninth Circuit affirmed this decision. 695 F.3d at 1000-03.

While the Fourth Amendment violations of the law are not necessarily dependent on the existence of racial discrimination, racial bias informs the challenged conduct and cannot be ignored. In *Melendres*, the court held that Maricopa County, Arizona violated the Fourth Amendment by using Hispanic

ancestry or race as a factor in forming reasonable suspicion or probable cause. The court held that while normally subjective intent has no role in the Fourth Amendment inquiry, "[t]he problem with the [defendant's] policies and procedures is that they institutionalize the systematic consideration of race as one factor among others in forming reasonable suspicion or probable cause in making law enforcement decisions." 2013 U.S. Dist. LEXIS 73869 at *232-34. The court further explained: "It is true that in any given factual setting there may be other facts independent of race sufficient to justify reasonable suspicion that a state statute related to immigration has been violated. But, that possibility does not justify the [defendant's] systematic policy in using race as a factor in forming reasonable suspicion." *Id*.

Plaintiffs have similarly alleged that "[t]he inferences that the Montana Highway Patrol uses to form a suspicion that a person is here without valid immigration status are based heavily on race," (Doc. 1 at 3-4), and this systematic conduct is also relevant to the Fourth Amendment inquiry.

Defendants' reliance on *Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1162 (D. Mont. 2009) is misplaced. In *Peschel*, the question before the court was "whether Montana law would allow a plaintiff to assert claims for a single tortious act under multiple provisions of the Montana Constitution." *Id*. (emphasis added). Relying on *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir.

2002), the court determined that when there is a single tortious act, and "[w]here a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source." *Peschel*, 664 F. Supp. 2d at 1162.

Of course, this does not mean that only one constitutional right can ever be violated in the same cause of action. As the court in *Ramirez* had noted: "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." 298 F.3d at 1029 (*citing Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996)). In *Armendariz*, for instance, the court found that challenged conduct should be analyzed under both the Fourth and Fifth Amendments, but not under the due process clause. 75 F.3d at 1320.

Here, Plaintiffs properly allege two unconstitutional acts under the Fourth and Fourteenth Amendments, respectively. The Fourth Amendment cannot be said to be a more "generalized" source of rights with regard to the challenged conduct. Rather, the Defendants explicitly violate the Fourth Amendment by attempting to "enforce" civil immigration laws without any legal authority or probable cause, and also violate the Fourteenth Amendment by selectively enforcing this practice in a manner that disparately impacts Latinos in Montana.

## II. The Montana Constitutional Claims May Be Brought Under 42 U.S.C. § 1983, Are Not Barred by the Eleventh Amendment, and Plaintiffs' References to State Law Are Proper.

Defendants apply an incorrect legal analysis in their argument to dismiss Counts III and IV under the Eleventh Amendment. (Doc. 16 at 4-7.) Although these are Montana constitutional claims under Article II, § 4 (equal protection) and Article II, § 11 (unlawful search and seizure), they are also brought before this Court under 42 U.S.C. § 1983.

Courts in the Ninth Circuit "recognize the rule that when a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action." *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996). In other words, a state law can serve as the basis of a section 1983 claim "where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States." *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 n.22 (9th Cir. 1993) (holding that the violation of a state law requiring a post-arrest hearing before a magistrate judge was "sufficient to create a liberty interest protected by the Fourteenth Amendment and actionable under Section 1983"), *cert. denied*, 510 U.S. 991 (1993).

It is true that state law claims brought under § 1983 are limited in scope: "To the extent that the violation of a state law amounts to the deprivation of a state created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Lovell*, 90 F.3d at 370. Plaintiffs brought the Montana constitutional claims in this § 1983 action because Defendants' violations of certain state laws, which are actionable as violations of the Montana Constitution, also violate the U.S. Constitution. For instance, Plaintiffs believe that Defendants also violated the U.S. Constitution when they violated Montana's statutory prohibition against racial profiling, MCA § 44–2–117, and the proper arrest procedures in MCA § 44–1–1101. (Doc 1. at 23-24.)

The Montana constitutional claims can only succeed to the extent that the challenged conduct violates the U.S. Constitution, but that provides no basis for dismissal at this stage.

Since these claims are brought under § 1983 in an official capacity suit for prospective injunctive relief, they do not violate the Eleventh Amendment. A state is not a "person" subject to suit under § 1983 for money damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989). Nevertheless, the Eleventh Amendment does not bar this suit against Defendants in federal court "because official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 165-67 n.14 (1985). This

outcome is mandated under the principles of *Ex parte Young*, 209 U.S. 123 (1908). *Id*. This "narrow, but well-established, exception to Eleventh Amendment immunity" dictates that "[w]hen sued for prospective injunctive relief, a state official in his official capacity *is* considered a 'person' for § 1983 purposes." *Flint v. Dennison*, 488 F.3d 816, 824, (9th Cir. 2007).

Even assuming, *arguendo*, that the state constitutional claims were not cognizable under § 1983, Defendants attempt to take their Eleventh Amendment argument too far by claiming that all aspects of the Plaintiffs' federal claims that allege or mention violations of state law are barred under the Eleventh Amendment. (*See* Doc. 16 at 4-6.) Defendants believe that Plaintiffs cannot even *reference* state laws without violating the Eleventh Amendment, even if the claims themselves are for violation of federal rights. This is absurd, because these references to Montana statutes are not themselves "claims" that can be dismissed.

Further, there is no cause to bar or dismiss references to state law violations, because these state laws are relevant to the "reasonableness" of an arrest under the Fourth Amendment. *See Gabbert v. Conn*, 131 F.3d 793, 804 (9th Cir. Cal. 1997); *see also Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1038 (9th Cir. 1996) (state law determines reasonableness of arrest in § 1983 claim), *cert. denied*, 136 L. Ed. 2d 397, 117 S. Ct. 506 (1996); *United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir. 1993) (reasonableness of arrest determined by referring to state law);

*United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989) (federal law may require searches and seizures be conducted in accordance with state law).

Due to the nature of Plaintiffs' claims, it is both relevant and necessary to explore Montana statutes and laws. Certain references in the complaint may point out that state laws did not permit or justify Defendants' conduct, but the claims in this complaint are ultimately for violation of federal rights.

**III. The Title VI Claim is Properly Pled, Because Defendants in a § 1983 Suit Who are Sued in Their Official Capacities are "Stand-Ins" for Their Respective Agencies or Government Offices.**

Defendants seek dismissal of Count V of the complaint, which alleges that Defendants' discriminatory conduct violated Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. (Doc. 16 at 8-10.) Defendants object that this claim can only be brought against entities, while they are individual persons. (*Id.*) Defendants' analysis is incorrect because they do not consider Count V under the rubric of § 1983, which provides the remedy for the vindication of Plaintiffs' rights under the U.S. constitution and federal statutes. *See, e.g.*, *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Plaintiffs' Title VI claim, like the Fourth and Fourteenth Amendment claims, is brought under § 1983 and must be reviewed under applicable precedent.

First, "plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for

the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 & n.3, 122 S. Ct. 2268, 2276 (2002) (citing text from Title VI as language conferring a § 1983 right) (citation omitted). It is "beyond dispute" that Title VI supplies a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S. Ct. 1511 (2001). The Ninth Circuit has adopted the U.S. Supreme Court precedent in *Gonzaga*, indicating that the individual right conferred under Title VI is an example of a right that can be enforced under § 1983. *Ball v. Rodgers*, 492 F.3d 1094, 1105-06 (9th Cir. 2007).

As discussed above, *supra* pgs. 10-11, a § 1983 suit against defendants in their official capacities for prospective injunctive relief is, in all respects other than name, to be treated as a suit against the entities that the defendants are agents of. *See Graham*, 473 U.S. at 165-66 ("It is *not* a suit against the official personally, for the real party in interest is the entity."); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358 (1991) (same).

The Defendants in this action are "stand-ins" for the Montana Highway Patrol and the Montana Department of Justice. Therefore, even if Defendants are correct that Title VI claims can only be brought against entities that are recipients of federal funding, Plaintiffs' claim does not violate that principle because the state entities are the real parties in interest, and no money damages are sought.

Defendants cite several cases that they claim to support the argument that a plaintiff cannot sue individual defendants under Title VI, regardless of whether they are sued in their official capacities. (Doc. 16 at 8-9.) However, none of the cases Defendants cite are on point, because none of them were official capacity § 1983 suits seeking solely prospective declaratory and injunctive relief, so that the state entities were the real parties in interest. *Shotz v. City of Plantation*, 344 F.3d 1161, 1169–71 (11th Cir. 2003) (Title VI suit seeking damages against individual city employees); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) (Title VI suit for money damages failed where school did not even receive federal funds); *Johnson v. Dodson Pub. Schs.*, Dist. No. 2-A(C), 463 F. Supp. 2d 1151, 1155 (D. Mont. 2006) (Title VI suit under § 1983 for money damages, not prospective injunctive relief); *Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517, 521 (3d Cir. 2011) (Title VI suit was not an official capacity suit for prospective injunctive relief only); *Price ex rel. Price v. La. Dept. of Educ.*, 329 Fed. Appx. 559, 560–61 (5th Cir. 2009) (same).

Further, while the Ninth Circuit has said a Title VI claim can be brought under § 1983, it has not reached the question of whether individuals must be sued in a Title VI claim rather than entities — much less the more complex question of whether a Title VI claim may be brought under § 1983 against individuals in their official capacity for prospective injunctive relief only, where the individuals are

merely "stand-ins" for their respective entities. *See Cholla Ready Mix, Inc. v Civish*, 382 F.3d 969, 978 n.7 (9th Cir. 2004) (declining to reach these issues). Under these circumstances, Plaintiffs state a claim for relief, and Defendants have not met their burden to support dismissal.

**IV. Attorney General Tim Fox Should Not Be Dismissed, Because He is a Necessary Party and Allegations are Properly Pled Against Him in His Official Capacity.**

Defendants argue that Attorney General Tim Fox must be dismissed from this action, claiming that the complaint does not specifically connect him to the challenged conduct. (Doc. 16 at 12-13.) It bears repeating that Attorney General Tim Fox is sued in his official capacity and the real party in interest is the Montana Department of Justice. *See, e.g., Ky.*, 473 U.S. at 165-66. "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

Therefore, the relevant inquiry is only whether the Montana Department of Justice can appropriately respond to injunctive relief. The complaint alleges that the Montana Department of Justice "has powers of supervision, approval, direction

and appointment over the Montana Highway Patrol, its Chief Administrators, and its patrol officers." (Doc. 1 at 9.) Montana statutes confirm that the Montana Department of Justice has all of these statutorily mandated obligations, as well as the power to "make, promulgate, and amend rules which prescribe procedures and practice requirements of the Montana highway patrol." MCA §§ 44-1-102, 103. There can be no question that the Montana Department of Justice can "respond to injunctive relief" that Plaintiffs seek. *See Hartmann*, 707 F.3d at 1127.

Indeed, even setting aside its explicit connection to the challenged conduct, the Montana Department of Justice is a necessary party to this lawsuit under Rule 19, because its joinder is required to accord the injunctive and declaratory relief Plaintiffs are seeking. For instance, its joinder will be needed to adequately implement "safeguards sufficient to ensure that such discrimination does not continue in the future." (Doc. 1 at 49.)

Defendants argue that "vicarious liability does not apply in § 1983 cases, so the plaintiffs' § 1983 claims against the Attorney General fail as a matter of law." (Doc. 16 at 13.) Not only does this argument miss the point in light of the legal paradigm discussed above, but the Montana Department of Justice is not pled in this action under a theory of vicarious liability. Plaintiffs do not allege that the Montana Highway Patrol's unconstitutional policies and practices were executed entirely unilaterally, without any connection to acts or omissions by the Montana

Department of Justice. Rather, Plaintiffs allege the opposite: "Defendants violate 42 U.S.C. § 1983 because the unconstitutional policy, practice, and custom was specifically instructed by final policymakers, actions of subordinates were approved and authorized by the final policymakers, and there was a deliberate indifference to an obvious need for patrol officer training, such that this lack of training would inevitably result in a patrol officer violating individuals' rights." (Doc. 1 at 44.) Defendants may not ask the Court to assume in this Rule 12(b)(6) motion that no acts and omissions will connect the Montana Department of Justice to this systematic misconduct.[1]

Under the facts of this case and the standard of review applicable to a Rule 12(b)(6) motion, the Montana Department of Justice cannot divorce itself from its statutory responsibilities or ask the Court to assume that it has no culpability in this systematic misconduct. The Montana Department of Justice, through Attorney General Tim Fox, was properly pled as a defendant.

---

[1] Although not necessary in an official capacity suit for prospective relief, the U.S. Supreme Court has long held that liability under § 1983 can attach when an entity fails to train its employees, the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure to train will likely result in the employee depriving an individual of his or her rights. *See City of Canton v. Harris*, 489 U.S. 378 (1989); *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Plaintiffs' complaint references precisely this type of conduct. (Doc. 1 at 12-16.)

## CONCLUSION

For all of the reasons stated above, the Defendants' motion should be denied in its entirety.

DATED this 16th day of January 2014.

By: /s/ Shahid Haque-Hausrath
Shahid Haque-Hausrath
Arif Haque
BORDER CROSSING LAW FIRM, P.C.

*Attorneys for all Plaintiffs.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2), the undersigned hereby certifies that this brief contains 3,890 words calculated by the word count function of Microsoft Word, excluding the caption and Certificate of Compliance. The undersigned also certifies that this brief is typewritten and double-spaced, except quoted material and footnotes, in 14-point font.

DATED this 16th day of January 2014.

By: /s/ Shahid Haque-Hausrath
Shahid Haque-Hausrath
Arif Haque
BORDER CROSSING LAW FIRM, P.C.

*Attorneys for all Plaintiffs.*